UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
|     Plaintiff, § | |
| v. § | Case No. 4:24-CR-0027-P (1) |
| JAMAION WILSON § | |
|     Defendant. § | |

## MOTION TO DISMISS THE INDICTMENT

Jamaion Wilson, by and through counsel, hereby files this Motion to Dismiss the Indictment. The prohibition on mere possession of machine guns under 18 U.S.C. § 922(o) violates the Second Amendment.

### Background

On October 12, 2023, Mr. Wilson was named in a criminal complaint alleging that he possessed a machine gun on or about May 9, 2023, in violation of 18 U.S.C. § 922(o). Then, on February 14, 2024, Mr. Wilson was named in a one-count indictment, alleging the same violation. Mr. Wilson signed a waiver of his arraignment and pleaded not guilty on February 20, 2024. Trial is currently scheduled for March 25, 2024, at 9:00am.

### Argument

**I.  Title 18 U.S.C. § 922(o) violates the Second Amendment both facially and as applied to Mr. Wilson.**

Section 922(o) is facially unconstitutional because the conduct it outlaws is covered by the Second Amendment's plain text and its prohibition on possessing machineguns conflicts with the country's historical tradition of firearms regulations.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

1

U.S. Const. amend. II.  In *Heller*, the Supreme Court held that the Amendment recognizes an "individual right to possess and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).  *Heller* also instructed that the Second Amendment extends "to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  *Id.* at 582.

In light of *Heller*, courts adopted a two-step analysis developed to determine the constitutionality of regulations restricting an individual's right to possess and carry weapons.  *See, e.g.*, *Hollis v. Lynch*, 827 F.3d 436, 446-47 (5th Cir. 2016).  The first step required courts to "determine whether the challenged law impinges upon a right protected by the Second Amendment . . . ."  *Id.* at 446.  If the law did so, pre-*Bruen*, courts would proceed to the second step, apply means-end scrutiny, and analyze whether the law survived.  *Id.* at 447.

*Bruen* jettisoned the second step; the Supreme Court believed it "one step too many."  *N. Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2211, 2126 (2022).  Under *Bruen* "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects the conduct."  *Id.* at 2129-30.  If the Second Amendment's plain text covers the conduct, "the government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 2130.  "Only then," the Supreme Court instructed, "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

Turning to the statute at issue here, § 922(o) forbids "any person to transfer or possess a machinegun."  18 U.S.C. § 922(o)(1).  Section 922(o)(2) provides two limited exceptions.  The

prohibition does not apply to "(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date" that § 922(o) took effect.   18 U.S.C. § 922(o)(2).

### a. The Second Amendment's plain text covers § 922(o) conduct.

A machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."   26 U.S.C. § 5845(b).   The first question the Court must decide is whether individual possession of such a weapon is conduct covered by the Second Amendment.[1] *See Bruen*, 142 S. Ct. at 2129-30.

This Court resolved the issue unfavorably to Mr. Wilson's position in its pre-Bruen

---

[1] Whether Mr. Wilson is part of the "people" protected by the Second Amendment does not impact his facial challenge to the statute.   As this Court explained recently, under *Bruen*, if a statute is inconsistent with the Second Amendment's text and historical understanding, then it "falls under *any* circumstance."   *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), *cert. granted*, No. 220915, 2023 WL 4278450 (U.S. June 30, 2023) (emphasis added).   And the Court has also found that "[a] facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual."   *Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) (cleaned up).

Even if the Court were to consider whether Mr. Wilson is part of the "people," such an analysis is properly conducted under *Bruen*'s second step because a person's status is not relevant to whether the Second Amendment protects the conduct.   Rather, a person's status considers whether historical traditions support restricting the individual's right to bear arms.   *See, e.g.*, *United States v. Quiroz*, 629 F.Supp.3d 511, 516 (W.D. Tex. 2022) ("whether the Government can restrict that specific conduct for a specific group would fall under *Bruen*'s second step: the historical justification for the regulation.").   And the Supreme Court has explained that when the Constitution refers to "the people," the term "unambiguously refers to all members of the political community, not an unspecified subset," and that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans."   *Heller*, 554 U.S. at 580-81.   The question, posited by then-Judge Barrett is "whether the government has the power to disable the exercise of a right that [those lawfully restricted] otherwise possess, rather than whether they possess the right at all."   *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barret, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111.

3

opinion in *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016). There, this Court held that § 922(o) does not violate the Second Amendment because machinegun possession was conduct not covered by the Second Amendment. *Id.* at 451. The *Hollis* panel thought that machineguns are dangerous and unusual and therefore not in common use. *Id.* at 451. But it should now revisit the issue in light of *Bruen* and updated statistical information not available to the Court at the time it decided *Hollis*.[2] Given the Supreme Court's decision in *Bruen* and the ever-increasing number of machineguns possessed in this country, the Court should revisit *Hollis* and reconsider its holding that machineguns are not "in common use." *Hollis*, 827 F.3d at 451.

The Supreme Court has said, in no uncertain terms, that the Amendment "extends, prima facie, to *all* instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (emphasis added). The term "Arms" does not apply "only [to] those arms in existence in the 18th century." *Id.* "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate self-defense." *Bruen*, 142 S. Ct. at 2132.

---

2 For example, in 2016 this Court stated that there were 175,977 pre-1986-civilian-owned machineguns in existence. *Id.* at 449. But in 2021, the ATF reported that 741,146 privately owned machineguns were registered under the National Firearms Act. *See* U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States: Annual Statistical Update 2021, 15-16 (2021), *available at* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download, *last visited* August 4, 2023.
Further still, the number of machinegun conversion devices the ATF took into custody from 2017 to 2021 increased 570% in comparison to the amount recovered from 2012 to 2016. *See* U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume Two, 4 (2023), *available at* https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-vii-recommendations/download, *last visited* August 4, 2023. These conversion devices do not count towards the 741,146 figure, meaning the number of privately-owned machineguns in the country is likely significantly higher than 741,146.

Admittedly, *Bruen* does appear to set a limitation on the "Arms" referenced in the Second Amendment. The weapon must be "in common use at the time" in order to qualify for Second Amendment protection. *Id.* at 2128 (citing *Heller*, 554 U.S. at 627). The Supreme Court has also found a historical tradition of prohibiting the carrying of "dangerous and unusual weapons." *Heller*, 554 at 627. But determining whether machineguns legally constitute "dangerous and unusual weapons" is properly addressed in *Bruen*'s second phase.

Machineguns are in "common use" in this country. As a result, an individual possessing a machinegun is conduct that the Second Amendment's plain text covers. Because the plain text of the Second Amendment covers the conduct, the Constitution "presumptively protects the conduct." *Bruen*, 142 S. Ct. at 2129-30.

Section 922(o) is presumptively unconstitutional.

**b. The government cannot meet its burden to show that § 922(o)'s restrictions are consistent with the Nation's historical tradition of firearm regulation because machineguns are not dangerous *and* unusual.**

The Supreme Court has recognized a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. The "and" is imperative; the weapon must be *both* dangerous *and* unusual. *See Caetano*, 577 U.S. at 417 (Alito, J., concurring) ("As the *per curiam* opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual.") (emphasis in original). Machineguns are not *both* dangerous *and* unusual.

Certainly machineguns are dangerous under the ordinary use of the term. So are all firearms. But the legal definition of "dangerous" differs from the ordinary meaning of the word. As Justice Alito explained, "the relative dangerousness of a weapon is irrelevant when the

weapon belongs to a class of arms commonly used for lawful purposes." *Caetano*, 577 U.S. at 418 (Alito, J., concurring). Machineguns are commonly used for self-defense. And Justice Alito also clarified that "[i]f *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous." *Id.*

## Conclusion

Mr. Wilson respectfully moves to dismiss the indictment based on the foregoing argument. The statute for which he is being charged is unconstitutional.

Respectfully submitted,

Jason Hawkins
Federal Public Defender
Northern District of Texas


*/s/ John J. Stickney*
John J. Stickney
Assistant Federal Public Defender
MA Bar No. 687134
819 Taylor Street, Room 9A10
Fort Worth, Texas 76102
817.978.2753
John_J_Stickney@fd.org

Certificate of Conference

I, John J. Stickney, hereby certify that on February 27, 2024, I conferred with Assistant United States Attorney Frank Gatto, and he is opposed to the relief sought.

*/s/ John J. Stickney*
John J. Stickney
Assistant Federal Public Defender

Certificate of Service

I, John J. Stickney, hereby certify that on March 8, 2024, I electronically filed this document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic filing system for the Court. The electronic case filing system sent a "Notice of Electronic Filing" to AUSA, Frank Gatto.

*/s/ John J. Stickney*
John J. Stickney
Assistant Federal Public Defender