IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:24-CR-027-P |
| JAMAION WILSON    (01) | |

### RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The government opposes Jamaion Wilson's motion to dismiss his indictment because his argument that possession of a machinegun is protected under the Second Amendment is foreclosed under *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016).

### I.   BACKGROUND

Around 7:26 p.m., on or about May 9, 2023, Fort Worth police officers responded to a shooting at a *Valero* gas station at 4801 S IH-35 in Fort Worth, Texas.  Officers located a victim with gunshot wounds and multiple shell casings nearby.  The victim was transported to the hospital and was declared deceased.

Officers determined the suspect was Jamaion Wilson and were able to obtain a description of his vehicle, a black Dodge Challenger, from witnesses and surveillance video.  About 45 minutes after the shooting, officers found Wilson in his vehicle and detained him pursuant to the investigation.  Officers then seized Wilson's vehicle since it was used in the commission of the crime and immediate flight.

Wilson had a non-custodial interview with detectives at the police station.  He told detectives he met two friends at the *Valero* gas station to buy a pistol from the victim for $300.  Wilson provided the money for the pistol and the victim provided the pistol.

Once the transaction was complete, the victim walked to the back of *Valero* and Wilson walked toward the front. About 20 seconds later, Wilson's friends realized the firearm was fake and flagged down Wilson. Wilson stated he had an unloaded pistol on him, so he retrieved an extended magazine from his vehicle and loaded it in his pistol.

Wilson said he and his friends walked towards the back of the *Valero* to confront the victim about the fake firearm he just sold. Wilson said he and his friends spoke to the victim at the back of the *Valero* for about 20 seconds and then Wilson pulled out his pistol and shot the victim, striking and killing him. Wilson claimed he was acting in self-defense.



(Screen Capture of Surveillance Video Showing Wilson Shooting Victim)

Wilson admitted to detectives that his firearm had a machinegun conversion device to make his pistol shoot with a higher rate of fire. Wilson said the firearm used in

the offense was inside of his car that FWPD officers had seized. Wilson provided consent for detectives to search his Dodge Challenger and retrieve the firearm used in the offense. FWPD Crime Scene personnel were able to recover the firearm from within Wilson's vehicle. The firearm is an olive-green Palmetto State Armory, model Dagger Compact, 9mm-caliber pistol. The firearm also had a silver metal switch extending out from the back slide. That metal switch installed on the Palmetto State Armory firearm is a device designed and intended, solely and exclusively, to convert the Palmetto State Armory firearm into a machinegun. Thus, both the switch and the Palmetto State Armory firearm with the switch installed are machineguns under 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(a) and (b).



(Picture of Firearm with Switch Extending from Back Slide)

**Government's Response to Defendants Motion to Dismiss - Page 3 of 7**

II.     **LEGAL ANALYSIS**

Wilson argues that 18 U.S.C. § 922(o) violates the Second Amendment both facially and as applied to him, though his arguments primarily focus on the facial challenge.  To prevail on his as-applied challenge, Wilson must show the application of section 922(o) to the facts of his case would violate his constitutional rights.  *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022).  Here, Wilson possessed a machinegun in connection with a homicide.  Thus, he fails to make a cognizable as-applied challenge.

Turing to his facial challenge, the Fifth Circuit has already held that machineguns "do not receive Second Amendment protection" because they "are dangerous and unusual and therefore not in common use."  *Hollis*, 827 F.3d at 451.  That was "step one" of the Court's "inquiry" and, as will be shown below, the Supreme Court's decision in *Bruen* did not disturb the first step of the inquiry.  *Id.*

Prior to *New York State Rifle & Pistol Ass'n Inc. v. Bruen,* 142 S. Ct. 2111 (2022), courts analyzed Second Amendment challenges using a two-step test.  *Hollis*, 827 F.3d at 446 ("After *Heller*, we adopted a two-step inquiry for analyzing laws that might impact the Second Amendment.").  First, the court determined whether the challenged law impinged upon a right protected by the Second Amendment.  *Id.*  If it did not, the law was upheld.  *Id.*  If, however, the law impaired a right protected by the Second Amendment, the court would proceed to the second step and "determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny."  *Id.* at 446-47.

The *Bruen* Court concluded that this two-step approach contained "one step too many." 142 S. Ct. at 2127. Although the Supreme Court opined that step one of the test **was adequately "rooted in the Second Amendment's text, as informed by history**," the Court determined that neither text, history, nor precedent authorized courts to apply "means-end scrutiny" at the test's second step. *Id.* (emphasis added). The Court explained that "the very enumeration of [a] right" in the Constitution "takes out of the hands of government—even the [Judiciary]—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon," as the strict-scrutiny and intermediate-scrutiny tests purportedly empowered judges to do. *Id.* at 2129 (quoting *Heller*, 554 U.S. at 634).

Instead, the *Bruen* Court held that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2129–30. To successfully defend a firearms law that restricts such conduct, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Therefore, *Bruen* did not disturb the Fifth Circuit's holding in *Hollis* because in *Hollis*, the Fifth Circuit decided machineguns,

are dangerous and unusual and therefore not in common use. They do not receive Second Amendment protection, **so we uphold Section 922(o) at step one of our framework**.

(Emphasis added). *Hollis*, 827 F.3d at 451. This is in accord with *Heller*, which recognized a "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *District of Columbia v. Heller*, 554 U.S.570, 627 (2008). *Heller* also acknowledged that it's precedent in *United States v. Miller*, 307 U.S. 174 (1939), stands for the proposition "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizen for lawful purposes." *Id.* at 625. Machineguns remain dangerous and unusual weapons even today. Nevertheless, Wilson's arguments to the contrary are foreclosed by binding Fifth Circuit precedent. *Hollis*, 827 F.3d at 451; *accord, United States v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Texas 2023) (holding facial challenge to section 922(o) "is foreclosed by binding Fifth Circuit and Supreme Court authority").

Accordingly, the government respectfully asks the Court to deny this motion.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*s/ Frank L. Gatto*
FRANK L. GATTO
Assistant United States Attorney
Texas State Bar No. 24062396
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas, 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

*s/ Frank L. Gatto*
FRANK L. GATTO
Assistant United States Attorney