UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

   Plaintiff,

v.                                                              No. 4:24-cr-027-P-1

**JAMAION WILSON (01),**

   Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss the Indictment. ECF No. 22. Having considered the Motion and applicable law, the Court determines the Motion should be and hereby is **DENIED**.

## BACKGROUND

On May 9, 2023, Fort Worth police officers responded to a shooting at a Valero gas station in Fort Worth. Officers located a victim with gunshot wounds and multiple spent shell casings nearby. The victim was transported to the hospital and was declared deceased. Officers determined the suspect was the Defendant Jamaion Wilson. About 45 minutes after the shooting, officers found Wilson in his vehicle and detained him pursuant to the investigation. Wilson had a non-custodial interview with detectives at the police station where he told detectives he met two friends at the Valero gas station to buy a pistol from the victim. Wilson's friends realized the firearm they were purchasing was fake and flagged down Wilson. Wilson stated he had an unloaded pistol on him, so he retrieved an extended magazine from his vehicle and loaded it in his pistol. Wilson said he and his friends walked towards the back of the Valero to confront the victim about the fake firearm he just sold. After speaking with the victim, Wilson pulled out his pistol and shot the victim, striking and killing him. Wilson claimed he was acting in self-defense. Wilson admitted to detectives that his firearm had a machinegun conversion device to make his pistol shoot with a higher

rate of fire. FWPD Crime Scene personnel were able to recover the firearm having a silver metal switch extending from the back slide from within Wilson's vehicle.

On October 12, 2023, Wilson was named in a criminal complaint alleging that he possessed a machinegun in violation of 18 U.S.C. § 922(o). Then, on February 14, 2024, Mr. Wilson was named in a one-count indictment, alleging the same violation. Mr. Wilson signed a waiver of his arraignment and pleaded not guilty on February 20, 2024. He then filed the present Motion to Dismiss the Indictment on March 8, 2024.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) ("A pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## ANALYSIS

In *District of Columbia v. Heller*, the Supreme Court held the Second Amendment protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home. 554 U.S. 570, 635, (2008). In so doing, the *Heller* Court rejected earlier interpretations of the Second Amendment which limited its application to militia members, finding the Second Amendment guarantees an individual's right to keep and bear arms, unconnected to militia service. *See id*. at 592. The Court

reached its conclusion by employing a textual analysis, informed by history. *See Id.* at 576–577. Two years later, in *McDonald v. Chicago*, the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. 561 U.S. 742, 767 (2010). Most recently, *Bruen* struck down a New York law requiring applicants to demonstrate a "special need" for a concealed carry license, finding it to be an impermissible restriction on the Second Amendment's protection of an "individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8–11 (2022).

Post-*Heller*, the Fifth Circuit applied a two-step inquiry for assessing the constitutionality of firearms restrictions. First, courts would determine whether the regulation fell within the scope of the Second Amendment right, looking to the text and historical tradition to inform their analysis. *See United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020). If the regulation was outside the scope of the Second Amendment, then the law was constitutional. *See id.* If it was inside the scope of the Second Amendment, courts would apply means-end scrutiny to assess its constitutionality. *See id.* In *Bruen*, the Supreme Court declared the two-step inquiry to be "one step too many." 597 U.S. 1 at 2. The *Bruen* Court indicated its earlier rulings do not support applying means-end scrutiny, but only "a test rooted in the Second Amendment's text, as informed by history." *Id.*

In the wake of the *Bruen* decision, defendants across the country are challenging the constitutionality of federal firearms offenses codified in 18 U.S.C. § 922. Challengers argue the law's recent interpretation makes it suspect under *Bruen's* text-and-history analysis. Indeed, the Federal Firearms Act was first enacted in 1938, making it relatively modern in comparison to the founding-era historical analysis required by *Bruen*. *See* 597 U.S. 1 at 27–28.

Here, Wilson challenges the constitutionality of federal law criminalizing possession of a machine gun under § 922(o). The Court considers his challenge below.

\*   \*   \*

18 U.S.C. § 922(o) says ". . . it shall be unlawful for any person to transfer or possess a machinegun." For the purposes of the statute:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). Wilson is charged with illegally possessing a firearm which had been modified with a "switch" and loaded with a large capacity magazine. *See* ECF No. 1 at 5. The modifications constitute "parts designed and intended, for use in converting a weapon into a machinegun" and, therefore, fit the definition of machineguns under the statute. Wilson moves for the Court to dismiss the indictment, arguing § 922(o) is unconstitutional both facially and as applied to him. *See* ECF No. 22 at 1.

To prevail on the "as applied" section of his challenge, Wilson must show the application of § 922(o) to the facts of his case would violate his constitutional rights. *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022). Courts must assess whether the Second Amendment protects the "proposed course of conduct." 597 U.S. 1 at 32. Wilson's proposed course of conduct was to use a machinegun to commit a homicide. The Court, therefore, finds Wilson fails to raise a cognizable as-applied challenge to § 922(o).

For his facial challenge, Wilson must show § 922(o) "is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). *Heller* recognized a

4

"historical tradition of prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627. Wilson does not dispute that "dangerous and unusual weapons" are not afforded Second Amendment protection; however, he argues machineguns are not dangerous *and* unusual. ECF No. 22 at 5–6.

The Fifth Circuit and Supreme Court have spoken on this issue at length. In *United States v. Miller*, the Supreme Court rejected a Second Amendment challenge to the indictment of two men for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act. 307 U.S. 174, 178 (1939). In *Heller*, the Supreme Court explained that *Miller* stands for the proposition "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizen for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625. *Heller* explicitly rejected a proposed reading of *Miller* that would render the National Firearms Act's restrictions on machineguns unconstitutional. *Id*. at 624. Similarly, the Fifth Circuit in *Hollis* held machineguns "do not receive Second Amendment protection" because they "are dangerous and unusual and therefore not in common use." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016).

Today, despite Wilson's arguments to the contrary, machineguns remain dangerous *and* unusual. Machineguns, which have been likened to pipe bombs and hand-grenades, are within the category of weapons of "quasi-suspect character" that are inherently dangerous. *Id*. at 448 (quoting *Staples v. United States*, 511 U.S. 600, 611–12, (1994). Despite Wilson's classification, they are also unusual. In *Hollis*, the Court held that the number of civilian-owned machineguns, about 176,000, fell far short of the amount necessary to be considered in common use. *Id*. at 449–50. Wilson argues that the situation has meaningfully changed since then, and thus machineguns should now be considered usual. *See* ECF No. 22 at 4. While correct that the number of civilian-owned machineguns has increased to about 740,000 as of May 2021, as cited by Wilson, this amount remains too insignificant for machineguns to be

5

considered in common use, especially when factoring in the total increase in firearm usage nationwide. *Id.*

Accordingly, the Court finds machineguns are within the category of "dangerous and unusual" weapons that do not receive Second Amendment protection. Wilson's facial challenge to § 922(o) thus fails.

## CONCLUSION

As discussed above, in order to succeed on his facial and as applied challenge to § 922(o), under the standard laid out in *Bruen*, Wilson must show the application of § 922(o) to the facts of his case would violate his constitutional rights or that it is unconstitutional in all applications. He fails to do so. The Court, therefore, **DENIES** Wilson's Motion to Dismiss the Indictment.

**SO ORDERED** on this **15th day** of **March 2024**.

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE